We're going to go on to case number five which is appeal number 15 1346 and it is the United States v. Derrick Clinton Good morning, Mr. Ohler. Good morning, Your Honors, and counsel may it please the court. My name is Joshua Uhler. I represent Derrick Clinton, the appellant in this case. The issue in this appeal is whether the district court procedurally erred in imposing the 76-month sentence, prison sentence in this case. We submit that the court erred in three separate ways. First, in applying the sentencing guideline enhancement under section 2K 2.1 sub b sub 6 sub b for possessing the firearm in connection to another felony offense. The secondary felony offense in this case was a drug trafficking offense and the commentary of the guidelines suggests that where the secondary felony is a drug offense that the enhancement should apply where the firearm is found in close proximity to the drugs, drug manufacturing materials, or drug paraphernalia. In the Lang case, this court extended the enhancement to scenarios where a firearm is obtained in exchange for drugs. In this case, police from the Milwaukee Police Department responded to a domestic violence call at Mr. Clinton's residence. When they arrived, Mr. Clinton was not home. The caller, his ex-girlfriend, reported a domestic violence scenario. The police finished their, completed their reports on that call. And as they were wrapping up, the caller told them that there was a firearm in the residence and that Mr. Clinton also had some cocaine in the residence. And they searched the residence and of course they, she had told the police that Mr. Clinton kept the firearm in the back bedroom closet on a shelf. How close to the living room is the bedroom in which the firearm was stored? This was not a big residence. This was a standard city of Milwaukee duplex, I believe. There was a two bedroom unit. It was in the back bedroom, which apparently, based on the record, was separated by a kitchen, a dining room, and then the main entry room. The, when Mr. Clinton was arrested, and the narcotics were found underneath the couch, right by the front door, so in the living room just as you enter into the home. Approximately a week later, Mr. Clinton spoke to the police after he was arrested. When asked about the drugs, he indicated that he, in fact, did have the drugs and he did sell the drugs. And when asked about the firearm, he did indicate that he had purchased the firearm from a drug user, a drug addict, for his protection. Now, the court, in applying the enhancement here, used really two factors. The first, the court concluded that the firearm was purchased in exchange for drugs. Is there any evidence supporting the district court's characterization of the firearm purchase as involving a gun for drugs transaction? No, Your Honor, and I believe in the government's response, they effectively concede that the record on that point is incredibly thin. And that's important here. The gun for drugs component, first, it was the primary factor argued by the government in support of the enhancement. It was the primary factor argued by the pre-sentence writer in support of the enhancement. And it was a primary factor cited by the court in applying the enhancement. But say that fact is off the table. Why is it clearly erroneous to nevertheless infer that there was a connection between the drugs and the gun by virtue of its presence in the apartment where he sells drugs from time to time? Well, that was the government's, I guess, response is that it's still not clearly erroneous. And here the court relied on this notion that Mr. Clinton possessed this firearm to protect his operation. And we submit that it was clearly erroneous for the judge to reach that conclusion because there's no evidence to support in the record that that's why Mr. Clinton possessed the firearm. When we look at the decisions where this court has addressed the inference that you're speaking of, Judge Shaw, that where a firearm is used to protect an operation, the cases have all involved large-scale drug trafficking operations. I cite to those in the reply the Aerie case, A-R-E. There was $20,000 in the residence, and it was a kilogram-size drug trafficker. Wall Tower, the defendant had 222 bags of crack cocaine. Perez case, there was $550,000 worth of drugs in the house. These are all large-scale drug operations. There's a reason why fancy jewelry stores like Tiffany will have armed security at them, but the jewelry department at Kmart doesn't have armed security. Oh, good to know. But Mr. Clinton did say he bought the gun for protection. Correct. Why isn't it reasonable to infer that the protection he was talking about there was protection in connection with his drug dealing, as small time as the drug dealing was? There was two grams of cocaine found in the residence, and there was no cash found in the residence. The record supported the, and the caller had indicated, the ex-girlfriend had indicated, that Mr. Clinton usually didn't do anything out of the residence. In his own statement, Mr. Clinton had indicated that he had a few regulars that he occasionally sold to. I think another distinction that the court can draw is that oftentimes when the enhancement is applied, there is evidence that the defendants are actually possessing the firearms while engaging in the drug trafficking activity in the home. Here, while when the police found the firearm, it was in the living room or in the dining room, it was only there because the ex-girlfriend had moved it there, so during the domestic violence situation, Mr. Clinton wouldn't access it. And I believe his statement to the police also supported that the purpose in his possessing the firearm was for general protection, this was a high crime area, rather than protecting whatever level of operation was present. The second area of error that we submit the district court committed in sentencing Mr. Clinton is in two comments that the court made that we submit have no meaningful place in the sentencing process. Those statements clouded the sentencing and the first sentence in discussing the nature of the offense, of course, was Judge Randa permissibly addressed the global scale of drug trafficking, indicated that he referenced a narco-terrorist attack where 23 school children were murdered and then said that whenever you participate in any way, shape, or form in that type of enterprise, it's a very serious offense. I'm certainly not here to glorify or minimize Mr. Clinton's conduct, but associating the type of conduct he was engaging in with that the court was referencing, we submit was not permissible. Perhaps on its own, that comment may be swept under the rug, but when coupled with the court's other comment that in response to Mr. Clinton's allocution when he indicated he's not a bad person, Judge Randa said, you just told me you're a good man and made some mistakes, but you're not. You're a bad man. And I'll tell you how simple this is. Good men do good things. Bad men do bad things. Dealing drugs is a bad thing. Ergo, therefore, you're a bad man. Simple as that. Again, I'm not here to address. There's a little more context to the judge's comments than just that, because doesn't he in some way try to give advice to Mr. Clinton to stop deluding himself by using those terms? And does that context change the gravity of your concerns? I think when taken in the context with some of the other comments that the court made, it cuts both ways. The question, I think, for this court to answer is whether there is those comments create the appearance of some personal view that is outside the scope of Section 3553, such that it clouds the proceedings and it makes it difficult for this court to determine what role or to what extent those comments impacted the sentence that the court imposed. I see I'm into my rebuttal time here. Thank you. Still mourning, Mr. Koenig. Good morning, Your Honor. May it please the Court. Jonathan Koenig on behalf of the United States. We're asking that you affirm the defendant's sentence because the application of the gun enhancement was not clear error and because the judge's comments at sentencing all related to permissible sentencing factors under 3553A. As to your first issue, is it your position that if drugs are sold out of a home and a gun is found in that home, we must always affirm and in connection with enhancement? No, Your Honor. That's a great question. Actually, it sort of meshes with Judge Shah's question about whether the enhancement can stand without this business about the exchange. It can. The reason is when this individual came before Judge Randa, what Judge Randa saw and talked about at length, he saw a drug dealer, somebody who in the 10 or 11 years since he dropped out of high school had really done nothing but be in prison and deal drugs. He also had the admission about two or three regular customers coming to the house. So it is not simply a case where you have a gun in one part of the house and drugs in another part of the house. So you're saying that he sometimes came to the house or on those few occasions. That's enough of a connection. Because in terms of saying the gun was directly exchanged for drugs, you're not agreeing with that. So we don't know whether Randa relied on that or not, do we? I don't believe he did, actually. If you look at page 10 of the transcript. Actually, he says in any event. In his comments, he says in any event, you have the defendant purchasing a gun from a drug clear. So why isn't that a statement to be read as that's the most important fact from Judge Randa's perspective. And you can ignore everything else. But in any event, he exchanged drugs for a gun and that enhancement applies. But he concludes that comment by saying, if you credit that evidence, I think, or something like that. But the problem here is how do we know what the judge would impose if that theory is off the table? The exchange of the gun for money. That's the problem. Well, the way I read the transcript is the judge is giving a lot of weight to this individual's history. And it's relevant not just to the criminal history part of the case, but also to the enhancement. These are the background facts to finding drugs in a gun in the same residence. The background facts to his admission that he has two or three regular customers who come there. He's a drug dealer. That's who you are. And Judge Randa says that at least four times during the sentencing. If he only sold small personal use amounts to a couple of close friends, would the enhancement be applicable nonetheless? Yes. Why should that presumption that the gun had something to do with the drugs apply in such small times? I don't think the evidence was that they were friends. I think the evidence was that they were regular customers and that these were sales. I mean, they're not just sharing drugs at the house. But they're small quantity sales. So why should we presume that there is a strong need to have a gun to protect those sales that are occurring in his house and at a small quantity? Well, there was a small quantity on the day that the police arrived. Well, but that's the day they arrived. I'm sorry, Your Honor? But that's the evidence in the case. You're not saying that, you know, two weeks before there was a lot more. He's admitting a regular course of conduct. We don't know what quantities he's selling to his regular customers. That's the problem. He admitted doing it, but he didn't say what the quantities were, right? Small. I think that's a fair statement, Your Honor, yes. I mean, you don't have anything other than a statement that it was small. Correct. Right? You know, and I'm just the point I'm trying to make, Your Honors, is you oughtn't to focus exclusively on what was found in the apartment on that day. There's background, there's context here that I think at least brings us outside of clear error, which, of course, as you well know, is a standard that permits you to overturn something only if you're left with a definite and firm conviction that it's small. But see, not knowing the quantity with the regular customers, and then it's a small amount on the day in question, then doesn't the factor that he thought that it had been guns exchanged for drugs, I mean the gun was directly exchanged for drugs, make that a much bigger factor? Or at this point, we don't know. Well, to return to the gun trade question for just a second, it's certainly, I'm willing to put it off the table for purposes of this argument, but it's certainly highly improbable that the gun was exchanged for anything other than drugs. The person was a drug addict that he got the gun from. Okay. Perhaps the judge's comments are ambiguous. I read them to say he wasn't sure whether to credit that or not.  You're a drug dealer. That's who you are. Judge Randis says that four times during the sentencing. And I think with that context, the enhancement should apply. If we start slicing the onion so thinly that we're going to have this presumption, with some quantities and not other quantities. It certainly doesn't amount to a narco-countergovernment situation, does it? A narco-terrorism situation. Well, the point the judge is making there is, cocaine doesn't grow on the sunny slopes of hillsides in Milwaukee, Wisconsin. It doesn't. Maybe marijuana grows in Uncle Joe's basement or on the Menominee Reservation or something. But cocaine comes to Milwaukee through a chain that involves criminal conduct. That's almost in the realm of judicial notice. It's so commonly accepted, Your Honor. And I think the comments here, unlike in Figueroa, where they seem to be completely unmoored from the defendant in the case, he's saying to the defendant, this is a serious offense. I consider it serious under 3553A. Congress considers it serious in part because of this supply chain that runs from Central America with the help of criminals and terrorists. And my tracking is right. There have been five cases where this judge has made comments that, I mean, three we reversed him on when he makes sort of these extraneous comments. Some have been tied to the specific defendants when he was reversed and a couple others where he was affirmed. You know, it's just troubling, I find, some of these comments that go to such extremes. Well, two comments, Your Honor. One subset of cases is clearly distinguishable, and that is the, I know that neighborhood where you were dealing drugs. I grew up there, and it's been ruined by drug dealers. That reflects maybe a personal bias or a grudge. Nothing like that here. There's another category of ethnic bias cases where the courts and the appellate courts in particular are concerned that there not be any appearance that the defendant is being sentenced on the basis of national origin. That's not a concern in this case. And then there's Figueroa, which I remember very well because I stood here and Judge Wood berated me about a lot of these very extraneous comments in that case. They were quite far afield. They involved the Middle East. They involved immigration. They involved Hitler's dog. There was a comment about other people, which I think in context was not intended to be a comment about people of Mexican origin, but it could certainly have been perceived that way. And the court looked at all of that together in Figueroa, and they said it's too much. It's over the top. We don't know what was going on here. I'm going to send it back. Here the comments are very tightly focused on the supply chain from South and Central America. When you're participating in cocaine trafficking in Milwaukee, even if it's small amounts, you are participating in a very serious criminal enterprise. This judge emphasizes the supply side. Another judge might emphasize the deleterious impact of drugs on users. These are all things that sentencing judges should have the flexibility to talk about in sentencing, again, assuming they don't reflect personal grudge, ethnic bias, or truly extraneous matters. Unless there's any further questions, I'm content to rest in my brief. You're so nice. No one would berate you. Thank you. Thank you. Come on up, Mr. Ulmer. Thank you, Your Honor. To follow up on your comment, Judge Williams, of Mr. Koenig, I think if the government's theory here prevails, any time drugs are sold out of a residence where there is a firearm located, regardless of the scale, under the government's theory, the enhancement would have to apply. And that doesn't square with this Court's decision in Wyatt, which says that the possession of the firearm cannot be coincidental to another underlying drug felony. And I think that point of tension is something that at some point the Court may have to take up. I don't think it has to do that here. Given the Court's clear error in finding that the firearm was exchanged for drugs, I think that's a sufficient basis to vacate the sentence and order that it be remanded. And that's what we're asking the Court to do. Thank you very much. Well, thank you very much. And you were appointed, Mr. Ulmer, and you have the deep thanks of the Court for taking the appointment and for representing your client so well. And the government always represents its client well. Thank you. The case will be taken under advisement.